## TALLMAN *v.* ATLANTIC FIRE & MARINE INSURANCE COMPANY.

### December, 1866.

Reversing 29 *How. Pr.* 71.

One who has sold property with the stipulation that the title shall remain vested in him until payment, retains, until such payment, an insurable interest.[*]

The seller of machinery stipulated that he was to remain owner until it was paid for, and the buyers insured it for his security, the policy stating that the loss was payable to the seller. The buyers subsequently mortgaged the property to plaintiff, who foreclosed the mortgage and bought in the property. The agent of the insurers, knowing of the interest of the seller in the property and the policy, received from the seller's agent the premium for a renewal, and the same agent of the defendants had notice of subsequent insurances effected by plaintiff on the property through him as agent for other companies. *Held*, that the insurance for the benefit of the seller was valid, and the facts that the mortgage was unknown to him, and that there was other insurance by the mortgagee, did not prejudice the former insurance, and that after an assignment of the claim for a loss on the former insurance to plaintiff he could recover thereon.

After the insurer's agent had, with knowledge of the facts, renewed for the benefit of the equitable owner, insurance first made in the name of the legal owners, additional insurance effected by one who acquired

[*] See also Wood *v.* Northwestern Ins. Co., 46 *N. Y.* 425.

the title of the legal owners, without knowledge of the equitable owner, and without consent indorsed on his policy, does not prevent a recovery on such policy, even though the action therefor be brought by the person who effected such additional insurance, claiming as assignee of the former.*

John E. Tallman, as assignee of William C. Brown, sued defendants in the supreme court on an insurance of the machinery in a paper mill. Brown, when owner of the machinery, sold it in November, 1860, to the firm of Sturtevant, Sons & Co., for a price to be paid in five installments of five hundred dollars each, during a period of more than two years. The buyers agreed to keep the property insured in a sum equal to the amount due to Brown, and Brown was to hold the policies. They also agreed that although they were to have possession, Brown was to remain owner of the machinery until it was paid for.

They thereupon procured from defendants a policy expressing that the loss, if any, was payable to Brown. On the expiration of this insurance in January, 1863, a thousand dollars remained due to Brown; but Sturtevant & Sons did not apply for a further renewal.

Defendant's agent, one Chapin, knowing Brown's interest, applied to plaintiff, who appears to have acted as Brown's agent in the matter, and ascertained from him the amount due Brown, and asked him, plaintiff, if he would pay the premium on a renewal. Plaintiff did so, and the agent issued a renewal receipt and sent it to Brown's office. Shortly afterward a loss occurred, and plaintiffs paid Brown the amount remaining due him from Sturtevant, Sons & Co., and took from Brown an assignment of the claim on the insurance made by defendants.

After the fire, and before this assignment, Brown had presented his claim for loss, and made oath to the agent that he was sole owner of the machinery insured, and that no other person except Sturtevant, Sons & Co. had any interest therein.

On the trial of this action, however, it appeared that Sturtevant, Sons & Co. had previously mortgaged their interest to Tallman, the plaintiff, and that Tallman had foreclosed the

* Cited on this point in Rowley *v.* Empire Ins. Co., p. 131 of this volume.

mortgage, and bought in the property; this mortgage having been made without Brown's knowledge. Tallman, after thus acquiring the title, and before the loss, took out other policies on the same property in other companies, for which companies defendant's agent was also agent, and defendant's agent had notice of all this insurance.

The objections passed on on this appeal were presented by a motion for nonsuit, and by a request to charge the jury. They were:

1. That Sturtevant, Sons & Co. were not absolute owners when they insured; and did not disclose the true title.

2. That the last renewal was void, also, because not authorized by Brown.

3. That the firm of Sturtevant, Sons & Co. was dissolved before the last renewal, and no notice of dissolution was given to the defendants.

4. That the subsequent insurance in other companies was without notice to the defendants; and that the agent's knowledge thereof, acquired while acting as agent of the other companies, was not sufficient to charge defendants.

5. That Sturtevant, Sons & Co.'s mortgage to Tallman, given without notice to defendants, avoided the policy.

6. That the sale under the mortgage, without notice to them, had the same effect.

7. That the policy was void because Sturtevant, Sons & Co. had no interest at the time of the loss.

Under directions of the court the jury found for plaintiff, and defendants appealed.

*The supreme court* applied the rule that there must be an insurable interest, such as the contract specifies, and that it must exist at the time of loss as well as at that of the issue of the policy; that it was the interest of Sturtevant, Sons & Co., and not that of Brown's, that was insured, and that plaintiff's claim was subject to all the contingencies to which Brown's contract was liable. Reported in 29 *How. Pr.* 71.

Plaintiff appealed, and stipulated that if the order appealed from be affirmed, judgment absolute should be rendered against him.

*Wm. C. Brown* for plaintiff, appellant;—Cited Ætna Ins. Co. *v.* Tyler, 16 *Wend.* 385, 401; *Phil. on Ins.* §§ 174, 180, 287; Niblo *v.* N. A. Fire Ins. Co., 1 *Sandf.* 551; Fletcher *v.* Commonwealth Ins. Co., 18 *Pick.* 419; Kernochan *v.* N. Y. Bowery Ins. Co., 17 *N. Y.* 428; Kenny *v.* Van Horn, 1 *Johns.* 385; Ames *v.* N. Y. Ins. Co., 14 *N. Y.* (4 *Kern.*) 253; McEwen *v.* Montgomery Ins. Co., 5 *Hill*, 101; Goit *v.* National Ins. Co. 25 *Barb.* 189; Post *v.* Ætna Ins. Co., 43 *Id.* 351; and see 4 *Bosw.* 179; Hodgkins *v.* Montgomery Ins. Co., 34 *Barb.* 213; 1 *Phil. on Ins.* § 556; Sheldon *v.* Atlantic F. & M. Ins. Co., 26 *N. Y.* 460; Hoffman *v.* Ætna Ins. Co., 32 *Id.* 405; Liddle *v.* Market Ins. Co., 29 *Id.* 184; Conover *v.* Sun Ins. Co., 1 *N. Y.* (1 *Comst.*) 290; Shotwell *v.* Jefferson Ins. Co., 5 *Bosw.* 247; Buffalo S. E. Works *v.* Sun M. Ins. Co., 17 *N. Y.* 403; Herkimer *v.* Rice, 27 *Id.* 173; Lawrence *v.* St. Marks F. Ins. Co., 43 *Barb.* 480; Wilson *v.* Genesee M. Ins. Co., 16 *Id.* 511; * Columbia Ins. Co. *v.* Lynch, 11 *Johns.* 232; Mutual Safety Ins. Co. *v.* Hone, 2 *N. Y.* (2 *Comst.*) 235.

*Myers & Magone*, attorneys for defendant, respondent;—Cited, Jennings *v.* Chenango Mut. Ins. Co. 2 *Den.* 75; Chase *v.* Hamilton Ins. Co., 20 *N. Y.* 52; Wilson *v.* Genesee Ins. Co., 14 *Id.* (4 *Kern.*) 418; *Angell on Ins.* §§ 55, 63; Murdock *v.* Chenango Mut. Ins. Co., 2 *N. Y.* (2 *Comst.*) 210; 3 *Kent's Com.* 344; Hancox *v.* Fishing Ins. Co., 2 *Sumn.* 142; The Saddler Co., *v.* Badcock, 2 *Atk.* 554; Lynch *v.* Dalzell, 3 *B. P. C.* 497; 23 *Pick.* 418; Wilson *v.* Genesee Mut. Ins. Co., 16 *Barb.* 511; Dey *v.* Poughkeepsie Mut. Ins. Co., 23 *Id.* 623; Hoffman *v.* Ætna Ins. Co., 32 *N. Y.* 405 and cases there cited; Buckley *v.* Garrett, 11 *Wright's Penn.* (noticed in 4 *Am. Law Reg. N. S.* 441); Tillou *v.* Kingston Mut. Ins. Co., 5 *N. Y.* (1 *Seld.*) 405; Western Mass. Ins. Co. *v.* Riker, 2 *A. L. Reg. N. S.* 127; Buffalo Steam Engine Works *v.* Sun Mut. Ins. Co., 17 *N. Y.* 401; Olcott *v.* Tioga R. R. Co., 40 *Barb.* 179; 27 *N. Y.* 546; Butler *v.* Miller, 1 *N. Y.* (1 *Comst.*) 496; Ferguson *v.* Lee, 9 *Wend.* 258; Brown *v.* Bement, 8 *Johns.* 96; Ackley *v.* Finch, 7 *Cow.* 290; Mellen *v.* Hamilton Fire Ins. Co.,

* Reversed on the ground that the agent was not one to whom notice was sufficient, in 14 *N. Y.* (4 *Kern.*) 418.

17 *N. Y.* 609; Carpenter *v.* Providence Washington Ins. Co., 16 *Peters,* 495; Bigler *v.* N. Y. Central Ins. Co., 22 *N. Y.* 402; Gilbert *v.* Phœnix Ins. Co., 36 *Barb.* 372; Grosvenor *v.* Atlantic Fire Ins. Co. of Brooklyn, 17 *N. Y.* 391; *Id.* 401; Bidwell *v.* Northwestern Ins. Co., 19 *Id.* 179; Frink *v.* Hampden Ins. Co., 45 *Barb.* 384; Foster *v.* Equitable Ins. Co. 2 *Gray,* 216; Boyle *v.* Colman, 13 *Barb.* 42; Anthoine *v.* Coit, 2 *Hall Supp. C. R.* 40; Lytle *v.* Erwin, 26 *How.* 491; Lockwood *v.* Thorne, 18 *N. Y.* 286; *Id.* 293; Conover *v.* Mut. Ins. Co., 1 *Id.* (1 *Comst.*) 290; Masters *v.* Madison County Ins. Co., 11 *Barb.* 624; 1 *Phil. on Ins.* §§ 115, 172, 175.

DAVIES, Ch. J. [After stating the facts.]—On January 9, 1863, when Brown, the plaintiff's assignor, reinsured with the defendants, in the sum of one thousand dollars, his interest in the property covered by the policy, it was, in fact, an insurance for his benefit. As between him and Sturtevant, Sons & Co., he remained and continued the owner of the property covered by the insurance. The arrangement between Brown and that firm seems to have been well understood by Chapin, the defendants' agent. If Brown continued the owner of the property, notwithstanding the executory contract of sale of November, 1860 (and as between him and the firm, he certainly did) then the insurance was, in fact, upon his property, though, in form, upon the property of Sturtevant, Sons & Co. Burt *v.* Dutcher, 34 *N. Y.* 493. We said, in the case of Bidwell *v.* Northwestern Ins. Co., 24 *Id.* 302: " Indeed, it is not easy to perceive why an insurance company, by reason of the formal words or clauses (of a general and comprehensive nature) inserted in a policy, intended to reach broad classes of contingencies, should ever be allowed to avoid liability on the ground that facts, of which the company had full knowledge at the time of issuing the policy, were then not in accordance with the formal words of the contract, or some of its multifarious conditions. If such facts are to be held a breach of such a clause, they are a breach *eo instanti* of the making of the contract, and are so known to be, by the company, as well as the insured. And to allow the company to take the premium without taking the risk, would be to encourage a fraud." We also held, in that case, that parol

evidence was admissible to show that the property insured was the owner's equity of redemption in the vessel, which was subject to certain mortgages known to the insurer.

This is precisely what was shown upon the trial of this action. Sturtevant, Sons & Co. allowed the policy to expire, so far as it related to any interest they might have in it. It was then renewed by Brown, to cover his interest, and to the extent of his interest, and he, by his agent, paid to the defendants' agent the premium demanded; and to allow these defendants to take a premium for a known and intended risk, without assuming it, and holding them answerable for their contract, would be to encourage a fraud. Brown had an interest in the property covered by the policy, either as owner or mortgagee, to the extent of one thousand dollars. It was an insurable interest. The defendants assumed the risk of the preservation of the property for the period within which the claim of Brown was to be extinguished, and, in case of its destruction, to pay to him the sum agreed upon. That property was destroyed, without any fault or fraud on his part. He did nothing, after the issuing of the policy to him, and prior to its destruction, to change, in any particular whatever, his relations to that property. He made no transfer of it, or of his interest in it. He effected no other insurance upon it; and the fact of the mortgage to Tallman by Sturtevant, Sons & Co., of their interest in the property covered by this policy, was notified to the defendants' agent, and duly acknowledged. The subsequent foreclosure by Tallman of the mortgage and the sale, thereby vesting in him absolutely all the right, title and interest of Sturtevant, Sons & Co., without the knowledge, consent, or assent of Brown, cannot, in any way, impair or affect the rights of the latter, under his contract of insurance with the defendants.

The judge at the trial, therefore, properly refused to nonsuit the plaintiff.

[Remarks on immaterial exceptions are omitted.]

The order of the general term, granting a new trial, should be reversed, and judgment on the verdict should be affirmed, with costs.

A majority of the judges concurred.

Order granting new trial reversed, and judgment on verdict affirmed, with costs.