WILLIAM A. FRYE *vs.* JOSEPH U. BURDICK *et al.*

Penobscot.    Decided July 3, 1877.

*Bailment.    Contract.*

The receipt of property to be safely kept and returned at a specified time, unless paid for, no price being fixed, is a bailment of the property so received and not a sale.

A contractor with the government of the United States, to transport the mail within the same, may contract with or hire another to transport the mail according to the terms of his contract.

Such agreement is not in contravention with R. S. of U. S. § 3963, which prohibits the assignment of mail contracts.

On report.

Assumpsit upon two written contracts. Writ dated December 30, 1873. The first count sets out that the defendants, one as principal and the other as surety, agreed that Joseph U. Burdick, the principal, would carry the U. S. mail on the mail route between Dexter and Bangor according to the terms, &c., setting out substantially the agreement contained in paper A, which is dated July 1, 1873, signed by Joseph U. Burdick, as principal, and V. Mason Burdick as surety, and is of the following tenor :

"Memorandum of an agreement made by and between William A. Frye, of Newport, of the one part, and Joseph U. Burdick, of Dexter, of the other part.

"For the consideration hereinafter stipulated to be paid by the said Frye, the said Burdick agrees with the said Frye to carry the United States mails, on route between Dexter and Bangor, according to the terms of contract made therefor between said Frye and the United States, and in accordance with all orders, directions, and regulations, now existing, or hereafter to be made on the part of the United States, and in all things to do and perform whatever may be required of said Frye, by the United States, concerning the carrying of said mails over said route, and to hold and save said Frye harmless and free from all expense concerning the fulfillment of said contract, orders, directions and regulations; it being expressly understood that the contract above referred to and the liability of the said Burdick to execute the same, shall not extend or continue beyond the first day of July, A. D. 1877.

"And the said Frye agrees with said Burdick that, in consideration of the performance by said Burdick, of the condition above named, commencing the first day of July, A. D. 1873, and continuing to the first day of July, A. D. 1877, unless the mail should be discontinued before that time, he, the said Frye, will pay said Burdick eight hundred dollars per year in quarterly payments, on the first days of October, January, April and July, of each year, or as soon thereafter as said Frye shall receive payment for the transportation of said mail from the United States.

"If any part of said route be curtailed, then said Burdick, shall receive pay in same proportion as to the number of miles cut off."

The count assigned breaches.

Of this agreement the defendants had a counterpart, signed by the plaintiff, as a consideration for the promise on their part.

The defendants contended that the agreement was invalid for reasons of public policy.

The second count sets out a delivery of two horses and other property, substantially in the terms of paper B, dated July 1, 1873, signed by the defendants, and of the following tenor:

"This day received of W. A. Frye, two black horses, called Hiram and Indian, two bay horses, called Fairbrother and Jenkins, two two-seated wagons, two single harnesses, the above property valued at eight hundred dollars, which I agree to keep in good order and condition and return the same to W. A. Frye at the end of two years, unless paid for."

The declaration closes as follows: "Yet the said defendants have not paid the plaintiff for said property, nor have they kept the same in said condition; but have so negligently and carelessly kept and used said property, that by reason of such negligent and careless keeping and using, the same has been greatly damaged, injured and rendered of much less value; and part of said property, to wit: one horse and one wagon, said defendants have not kept, but suffered and permitted them to go out of their possession, and to be wholly lost to the plaintiff; and other of said property said defendants have not kept, but have sold, exchanged and delivered the same into the custody of other persons having no right thereto, by reason of which the plaintiff has been put to great cost and expense to recover the same. To the damage," &c.

Under the second count, the plaintiff offered in evidence the paper marked "B," and claimed damages of the character described in that count. But the defendants claimed that, by this paper, the title in the articles described in it, passed to them, and that the plaintiff was entitled to no action upon it at the date of suing out of plaintiff's writ.

Paper marked "B," is of the same date as paper marked "A," written on the same sheet of paper, and was made as part of the same transaction, to enable the defendant to perform the agreement contained in paper "A," and the defendant contended that paper "B," was also invalid for reasons of public policy.

The case was taken from the jury and reported for the law court to determine upon the case thus stated, whether the action can be maintained upon both or either of the counts in the writ. If it can, then the action to stand for trial according to such decision; otherwise a nonsuit to be entered.

*G. W. Whitney*, for the plaintiff.

*J. Crosby*, for the defendants.

APPLETON, C. J. The law seems well settled that where one receives goods and chattels of another on a contract, by which he has a right to return them or pay a stipulated price for them, the property passes and he is regarded as the purchaser.

And in all the cases to which we have been referred, the contract was in the alternative, to return or pay the stipulated price. In *Dearborn* v. *Turner*, 16 Maine, 17, the contract was to return or pay. "We are very clear," observes Weston, C. J., "that the security of the plaintiff vested in contract; and that Nason having the alternative to return or pay, the property passed to him, and he was at liberty to sell the cow." In *Buswell* v. *Bicknell*, 17 Maine, 344, it was decided, when an election is given to the party receiving a chattel to return it or pay a sum of money, by a given day, the property in the chattel vests in him. "It is the option conceded to the party receiving," observes Weston, C. J., "which produces this effect. He may do what he will with the article received. If he pays, he fulfills his contract. If he neither pays nor returns, he is liable to an action." In *Holbrook* v. *Armstrong*, 10 Maine, 31, the cows were to be delivered at the end of two years or their value in money. In *Perkins* v. *Douglas*, 20 Maine, 317, the contract was to return the oxen or pay the stipulated price. "It is in the alternative," observes Shepley, J., "and permitted Burton to return the oxen, or pay the money, at his election." To the same effect is the case of *Hurd* v. *West*, 7 Cow. 752.

In the present case the defendant, Joseph U. Burdick, received horses and other property of the plaintiff, for which he and the other defendant gave the following receipt: "Dexter, July 1, 1873. This day received of W. A. Frye two black horses, called Hiram

and Indian, two bay horses, called Fairbrother and Jenkins, two two-seated wagons, two single harnesses, the above property val- ued at eight hundred dollars, which I agree to keep in good order and condition and return the same to W. A. Frye, at the end of two years, unless paid for. (Signed.) Joseph U. Burdick, V. Mason Burdick, surety."

Here no bargain for the sale of property is shown. The property is "received" not "bought." No price for each or all of the articles is agreed upon. They are only valued. There is no promise to pay.

The contract between the parties, embodied in the writings was one of bailment, not of sale. It is not in the alternative. It is to keep the property in good order and condition and return the same at a stipulated time "unless paid for." The principal in the contract is not absolved from his promise to keep and return except upon payment. He is bound to return the articles received unless paid for. The principal has no title unless on payment. V. Mason Burdick is surety—for what? That the property received shall be kept in good order and condition and returned unless paid for. The promise then to return the goods is obliga- tory unless something else is done, that is, unless it is paid for. The surety is not liable for the price, for none has been made. He is surety only that the contract should be performed, and he is not to be relieved except upon its performance.

The contract contains no words of sale. In *Sargent* v. *Gile*, 8 N. H. 325, it was decided that, where one receives goods upon a contract by which he is to keep them a certain period, and if he pays for them, he is to become the owner, but otherwise, he is to pay for the use of them, he receives them as bailee and the prop- erty in the goods is not changed, until the price is paid. In *Por- ter* v. *Pettengill*, 12 N. H. 299, one Russell gave the plaintiff the following contact. "Received of Porter and Rolf one cooking stove and furniture, at twenty-eight dollars, for which I am to pay $3 per month or return the same, if I do not comply as above." Parker, C. J., in delivering the opinion of the court says: "Russell signs an agreement by which he acknowledges the receipt of the stove, the value is fixed, and he is to pay so much a month, or

return it. If he failed to pay, it became his duty to return the property, and there are no words of transfer, or any thing to indicate that the parties intended any thing more than a bailment, until the price was paid." In *Billings* v. *Tucker*, 6 Gray, 368, 369, in a lease of a farm and stock, including a yoke of oxen and several cows, the lessee covenanted to take good and prudent care of the stock and to faithfully return said stock in quantity and quality to the lessor, or the value of the same in money, as the lessee may elect; said property, if retained, to be appraised by disinterested persons at the close of the contract." The lessee sold the oxen and two cows and substituted others in their stead; Held that he had no right, before the expiration of the lease, to sell the oxen and cows so substituted.

There can be no reasonable doubt as to the meaning of the parties. The one did not intend to part with his title. The other did not suppose he was acquiring one. If the title to the property has changed, the change has taken place without the knowledge or expectation of either party and against the intention of both. But no such change has taken place. The contract to safely keep and return was explicit. The defendants cannot be relieved from their liability, unless upon payment. But payment has not been made. The contract, then, is in full force to keep in good order and condition and return, and the defendants are liable in damages for its violation.

By the Revised Statutes of the United States, § 3963, it is enacted that "no contractor for transporting the mail within or between the United States and any foreign country shall assign or transfer his contract, and all such assignments or transfers shall be null and void."

What the contract of the plaintiff was no where appears in the evidence. The contractor has the right to employ others to aid him in the performance of his contract. The statutes of the United States do not debar him from having the assistance of servants. No assignment or transfer of the plaintiff's contract is shown. *The case is to stand for trial.*

WALTON, BARROWS, DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.